IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

F I L E D

JUN 1 4 2019

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

R. ALEXANDER ACOSTA,
*Secretary of Labor, United States
Department of Labor*

          Plaintiff,

     v.

MERCY SERVICES OF HEALTH, INC.,
*et al.,*

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:18cv0366 (LO/JFA)

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

Thankfully it is rare that this court must deal with a case in which a represented party handles a matter as poorly as this case has been handled and never has this court seen a case handled as poorly as this one when the represented party is an agency of the United States. Throughout the life of this case counsel for the plaintiff has failed to return calls, failed to provide information in a timely manner, failed to recognize legal issues, and failed to address the issues that have been presented by the court. Some of these will be addressed below.

This matter is before the court on an amended motion for default judgment filed by plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor ("plaintiff" or the "Secretary") against defendant Mercy Services of Health, Inc. d/b/a Mercy Services of Health ("defendant" or "Mercy Services").[1] (Docket no. 66). Pursuant to 28 U.S.C.

---

[1] On March 15, 2019, the District Judge entered an order staying this action as to the individual defendant John Ndunguru ("Ndunguru") until June 30, 2019. (Docket no. 60). Plaintiff's amended motion for default judgment only seeks default judgment against the corporate defendant, Mercy Services. (Docket no. 66). Given the stay and the relief sought by plaintiff's amended motion for default judgment, these proposed findings of fact and recommendations will be limited to plaintiff's claims against Mercy Services and will not address any claims against Ndunguru.

§ 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

## Procedural Background

On March 23, 2018, plaintiff filed this action against defendants Mercy Services and John Ndunguru, individually and as owner and president of Mercy Services of Health, Inc., alleging violations of the Fair Labor Standards Act ("FLSA"). (Docket no. 1). Plaintiff did not request that summonses be issued at the time the complaint was filed. (*Id.*). On April 11, 2018, plaintiff filed an amended complaint as to all defendants. (Docket no. 2) ("Am. Compl."). Plaintiff filed proposed summonses as to the defendants on April 12, 2018 and April 18, 2018 (Docket nos. 5, 6, 8). The Clerk's Office issued the corrected summonses as to the defendants on April 18, 2018 and April 19, 2018. (Docket nos. 7, 9). On May 17, 2018, plaintiff filed an executed certificate of service that indicates that Ndunguru was not present at the Mercy Services office when process was served on April 27, 2018, but that process server spoke with Ndunguru on the phone once she arrived at the business. (Docket no. 10). The affidavit states that Ndunguru instructed the process server to leave the summons and the amended complaint with Meron Kefyalel, a receptionist, because he was in Maryland. (*Id.*).

On July 10, 2018, plaintiff requested entry of default as to defendants for failure to file a responsive pleading in the time required (Docket no. 13) and filed an amended affidavit in support on July 23, 2018 (Docket no. 14).[2] The Clerk of Court entered default against the defendants on July 24, 2018. (Docket no. 15). Plaintiff filed a motion for default judgment against defendants on August 6, 2018 (Docket no. 16) along with a memorandum in support

---

[2]As shown on the docket sheet, the Clerk's office was required to notify plaintiff numerous times concerning inadequate or incomplete filings in this case such as an unexecuted affidavit being filed (July 11, 2018 minute entry) and a notice of hearing referencing Cambridge Technologies and other unrelated persons instead of the defendants in this action (Docket no. 18).

(Docket no. 17), and noticed the hearing on the motion for September 21, 2018 (Docket no. 18). On August 27, 2018, counsel for defendants entered an appearance (Docket no. 21) and filed a motion to set aside entry of default and leave to file an answer out of time (Docket nos. 23), a proposed answer (Docket no. 24), and a memorandum in support (Docket no. 25). As set out in the defendants' memorandum, numerous issues were raised concerning whether service was proper and whether plaintiff had obtained the entry of default in a proper manner. (Docket no. 25). Given the appearance of counsel and considering the motion filed on behalf of defendants, the court granted defendants' motion for leave to file an answer and set aside the entry of default. (Docket no. 26).

On October 2, 2018, the District Judge entered a Scheduling Order setting the pretrial deadlines and opening discovery. (Docket no. 27). The parties filed a Rule 26 Joint Discovery Plan on October 25, 2018 (Docket no. 28), which the court approved that same day (Docket no. 29). On January 18, 2019, counsel for defendants filed a motion for leave to withdraw pursuant to Mercy Services' instructions to cease all actions in the matter, including representation, and indicating that defendants had retained new counsel. (Docket no. 33). Counsel also filed a memorandum in support (Docket no. 34) and noticed the motion for a hearing on February 1, 2019 (Docket no. 35). The court entered an order on January 22, 2019 requiring counsel to serve a copy of the motion for leave to withdraw on the defendants prior to the hearing date (Docket no. 36), which he did on January 29, 2019 (Docket no. 41). Plaintiff objected to the motion insofar as it would permit the defendants to proceed unrepresented, instead asking the court to prohibit counsel from withdrawing from the matter until defendant Mercy Services retained new counsel. (Docket no. 37).

On January 25, 2019, plaintiff filed a motion to compel responses to requests for production of documents, requests for admissions, and interrogatories (Docket no. 39), and noticed the hearing for February 1, 2019 as well (Docket no. 40). On February 1, 2019, the court granted the motion to withdraw but required new counsel to notice their appearance on behalf of Mercy Services by February 8, 2019 and warned that failure to do so may result in default proceedings against the corporate defendant. (Docket no. 43). The order also required former counsel to provide defendants with a copy of the order. (*Id.*). Because counsel for defendants provided discovery responses to plaintiff earlier that morning, the court denied the motion to compel without prejudice. (Docket no. 44). In addition to ordering counsel to provide defendants with a copy of the order on the motion to withdraw, the court also mailed a copy of both orders to Ndunguru.

The February 8, 2019 deadline for counsel to make an appearance on behalf of Mercy Services came and went without counsel making an appearance. On February 22, 2019, plaintiff filed a second motion to compel more complete discovery responses and overrule defendants' objections, and to deem plaintiff's requests for admissions admitted. (Docket no. 45). Plaintiff also filed a memorandum in support (Docket nos. 46, 48) and noticed the hearing for March 1, 2019 (Docket no. 47), but then re-noticed the hearing for March 8, 2019 (Docket no. 49). All pleadings indicated that defendants were served with a copy of the motion and accompanying documents by mailing a copy to Ndunguru at the Fairfax County Adult Detention Facility.

On February 25, 2019, plaintiff filed a request for entry of default against Mercy Services for failure to retain legal counsel as ordered by the court. (Docket no. 50). The court entered an order requesting that the Clerk's Office enter default as to defendant Mercy Services due to its failure to comply with the order and its inability to continue in the suit unrepresented (Docket no.

51), and the Clerk of Court entered default on February 25, 2019 (Docket no. 52).  At the hearing on the motion to compel on March 8, 2019, the court raised the issue with plaintiff's counsel concerning Ndunguru being incarcerated and the need to have a guardian *ad litem* or representative appointed since he was deemed a person under a disability.  Since a default had already been entered against Mercy Services and Ndunguru was incarcerated, the court denied plaintiff's motion to compel on March 8, 2019.  (Docket no. 55).  On March 15, 2019, plaintiff moved to stay the case against defendant Ndunguru until June 30, 2019, but did not request a stay as to defendant Mercy Services.  (Docket nos. 57, 58).  That same day, the District Judge stayed the case as to Ndunguru.  (Docket no. 60).

On March 29, 2019, plaintiff filed a motion for default judgment as to defendant Mercy Services (Docket no. 61), a memorandum in support (Docket no. 62), and noticed the hearing for April 5, 2019 (Docket no. 63).  After being contacted by the court concerning certain issues, on April 4, 2019, plaintiff filed a notice cancelling the hearing because there were errors in plaintiff's back wage spreadsheet and indicating an intent to refile the motion for default judgment with a new notice of hearing.  (Docket no. 64).  The undersigned cancelled the hearing later that day.  (Docket no. 65).  On April 12, 2019, plaintiff filed an amended motion for default judgment with *Roseboro* notice (Docket no. 66), a memorandum in support (Docket no. 67), and a notice setting the hearing for Friday, April 26, 2019 (Docket no. 68).  Because the undersigned did not hear motions on April 26th, plaintiff re-noticed the hearing for Friday, May 10, 2019.  (Docket no. 69).  Based on this amended motion for default judgment, the court denied plaintiff's previous motion for default judgment as moot.  (Docket no. 70).  On May 10, 2019, counsel appeared before the court on behalf of plaintiff, and no one appeared on behalf of defendant Mercy Services.  At the hearing on May 10, 2019, the court questioned counsel for the plaintiff

5

concerning numerous issues with the amended pleadings.[3] Those concerns involved how plaintiff had calculated the damages that were being requested and various inconsistencies and impossibilities concerning those calculations. As discussed in more detail below, these included basic information like how the plaintiff could claim a person worked more than 300 hours in a two-week period when working 24 hours a day for fourteen days would be 336 hours and why the sworn statement from the investigator in charge of this matter that employees "worked between 51 to 60 each workweek, and on occasion up to 98 hours per workweek" (Docket nos. 67-3 ¶ 6(l)) was ignored in calculating the amounts claimed.[4] The court also questioned why plaintiff had redacted certain information in some of the informant statements but not in others, including basic information such as the number of hours that person worked a week. (*Compare* Docket no. 76-2 p. 4 "I work [redacted] hours per week, *with* 76-2 p. 5 "I work 40 hours per week").[5] At the request of the plaintiff, the court allowed plaintiff to file a supplemental memorandum by May 24, 2019 addressing the issues raised during the hearing and before. Plaintiff did file a supplemental memorandum on May 24 that had to be refiled on May 28 to once again correct a defect in filing. (Docket nos. 75, 76). Unfortunately, the supplemental memorandum did not directly address the issues raised during the hearing.

Putting aside all of plaintiff's failings in this case, the fact is that Mercy Services has been found in default, the plaintiff has stated that notice of these proceedings has been provided

---

[3] On at least two previous occasions the court had informed plaintiff's counsel of issues through telephone conversations, and while a few of them had been addressed in the amended pleading, some had not.

[4] The court had previously questioned why the initial calculations were based on a claimed rate of $10.00 an hour when the informant interviews and documents revealed a payment of $10.50 an hour. Without any explanation as to why the $10.00 rate had been used earlier in the calculations sworn to as being true to the best of the investigator's knowledge and belief (Docket no. 67-3), the amount was changed to $10.50 in the more recent filing (Docket no. 76-3).

[5] The court never suggested that the identities of the informants should be disclosed. The court's concern was that information concerning the number of hours worked and work schedule of some of the informants was redacted in some of the statements but was not redacted in other statements. Plaintiff failed to address this issue in the supplemental filing.

to Ndunguru, the president and owner of Mercy Services, and Mercy Services has not refuted the statements or claims made by the plaintiff in the motion for default judgment.  It is also clear that many of the employees of the Mercy Services did work more than 40 hours a week and were only paid their regular hourly rate for the overtime worked in violation of the Fair Labor Standards Act.  Under these circumstances, the court is left in position of having statements presented to it by the Secretary of Labor that are sworn to under the penalty of perjury that have not been rebutted by the defendant but that clearly contain errors and ignore common sense.  While the court has attempted on several occasions, both informally through telephone conversations (when the calls were eventually returned by counsel) and formally during hearings in open court, to have the Secretary of Labor address these troublesome issues, those requests have largely gone unanswered.

### Factual Background

The following facts are established by the amended complaint (Docket no. 2) ("Am. Compl.").  Mercy Services was incorporated in Virginia with its principal place of business in Alexandria, Virginia.  (Am. Compl. ¶ II).  Mercy Services regularly had an annual gross volume of sales or did business in the amount of at least $500,000.  (Am. Compl. ¶ IV).  Defendant Ndunguru was the owner and president of Mercy Services, oversaw the daily operation of the business, and had the ability to hire, fire, and set pay rates.  (Am. Compl. ¶ III).  Mercy Services provided private home care services through home aides.  (Am. Compl. ¶ II).  The aides administered medication and provided colostomy care, catheter care, physical therapy, occupational therapy, feeding, bathing, assistance with household chores, and dressing assistance.  (Am. Compl. ¶¶ II, IV).  Among their other duties, staff regularly handled insurance documents and sent those documents across state lines.  (Am. Compl. ¶ IV).

From January 3, 2016 through January 1, 2018, many of Mercy Services' employees regularly worked more than 40 hours in a work week ("frequently and on a recurrent basis worked on average 51 to 60 hours per week and on occasion up to 98 hours per work week"), but Mercy Services only paid the employees their regularly rate of pay, $10.00 per hour, for all hours they worked. (Am. Compl. ¶¶ V, VI).[6]  In addition, Mercy Services misclassified employees as independent contractors and failed to make or maintain records regarding the actual number of hours employees worked each day and week. (Am. Compl. ¶ VII).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure to plead or otherwise defend against the action, as ordered by the Court, the Clerk entered a default as to Mercy Services. (Docket no. 52).

A defendant in default admits the factual allegations in the complaint. *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter when necessary to enter or effectuate judgment.

## Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. Pursuant to 28 U.S.C. § 1331, "district courts shall have

---

[6] As discussed above, plaintiff has corrected this to $10.50 an hour after the court questioned why $10.00 an hour was being used when the informant statements and payment documents seemed to indicate the hourly rate was actually $10.50.

original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Similarly, 28 U.S.C. § 1337(a) provides that "district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." The FLSA itself also states that any action to recover unpaid overtime wages may be maintained "in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b). Because this action arises from a law of the United States, the FLSA, and further arises from an Act of Congress regulating commerce, this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337. Additionally, this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides that "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

This court also has personal jurisdiction over Mercy Services. As stated in the amended complaint, Mercy Services had its principal place of business in Alexandria, Virginia. (Am. Compl. ¶ II). Venue is also proper in this court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this District. (Am. Compl. ¶¶ II, III).

For these reasons, the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over Mercy Services, and that venue is proper in this court.

## Service

Federal Rule of Civil Procedure 4(h) allows a corporation within a judicial district of the United States to be served in the manner prescribed by state law or "by delivering a copy of the

summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." In Virginia, a corporation may be served "[b]y personal service on any officer, director, or registered agent" of the corporation. Va. Code. Ann. § 8.01-299(1) (2019). Except in divorce and annulment proceedings or where specifically prescribed by statute, Virginia deems otherwise insufficient service sufficient if the individual to whom process was directed actually receives the process "within the time prescribed by law." *Id.* § 8.01-288.

On April 18, 2018, a summons was issued for service on Mercy Services at 5520 Cherokee Avenue Suite 205, Alexandria, Virginia 22312. (Docket no. 7). The return of service filed on May 17, 2018 indicates that a private process server spoke with Ndunguru on the phone when she arrived at the Mercy Services office and was instructed to leave the summons and amended complaint with the receptionist, Meron Kefyalel. (Docket no. 10). The record does not establish that Ms. Kefyalel is an officer, director, or agent authorized to accept service under either the Federal Rules or Virginia law. On August 27, 2018, counsel moved to set aside the first entry of default against defendants and for an extension of time to file an answer (Docket no. 23), representing that defendants never received process and that service was ineffective (Docket no. 25). The court set aside the default and granted the motion for an extension of time (Docket no. 26), and defendants did not raise insufficient service of process as an affirmative defense in their answer (Docket no. 24). The parties had begun litigating the case and discovery was underway when defendants terminated their counsel's representation and defendants were specifically warned that a corporate defendant could not proceed *pro se* in federal court. (Docket no. 43). Based on the foregoing, the undersigned recommends a finding that the procedural history of this case establishes that, by at least August 2018, Mercy Services had notice of and

had reviewed the court-issued summons and amended complaint, retained counsel, and actually proceeded in defending against this action. Accordingly, the undersigned recommends that service was accomplished on Mercy Services.

### Grounds for Entry of Default

A corporation must be represented by legal counsel in federal court. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." (citations omitted)). Failure to comply with a court order requiring an unrepresented corporation to retain new counsel can constitute a "failure to defend" pursuant to Federal Rule of Civil Procedure 55(a). *See, e.g., Eagle Assoc. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991) (affirming the district court's entry of default against an unrepresented corporate defendant after it "willfully disregarded" a court order to retain new counsel); *cf. S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (""[D]efault judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party."). After defendants instructed counsel "to cease all representation" (Docket no. 33 at 1), the court warned Ndunguru verbally through former counsel and in writing by court order that Mercy Services, as a corporate defendant, must be represented by counsel to defend against this action in federal court and was granted time for counsel to enter an appearance. (Docket no. 43).

Despite these warnings, Mercy Services has failed to comply with the court's order and retain new counsel to defend against this action. In response to plaintiff's request for entry of default filed more than two weeks after the deadline imposed in the court order for Mercy Services to retain new counsel had passed (Docket no. 50), the court ordered that default be

entered as to Mercy Services pursuant to Federal Rule of Civil Procedure 55(a) for the failure to plead or otherwise defend against the action (Docket no. 51). The Clerk of Court entered default against Mercy Services on February 25, 2019. (Docket no. 52). Therefore, the undersigned recommends a finding that defendant Mercy Services failed to comply with the court's order and retain new counsel to proceed in defending this action, and that the Clerk of Court properly entered default as to Mercy Services.[7]

### Liability and Measure of Damages

According to Federal Rules of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Given that a default has been entered, the factual allegations in the complaint are deemed admitted. *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

Plaintiff has established that defendant violated Sections 7 and 11(c) of the FLSA. (Am. Compl. ¶¶ V–VIII). Pursuant to 29 U.S.C. § 216(c), "[t]he Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages." The Secretary has identified and itemized defendant's violations of FLSA's overtime provisions from January 3, 2016 to January 1, 2018 (Docket no. 67-1), as sworn by Wage and Hour Investigator Brianna N. Canadine ("WHI Canadine") (Docket nos. 67-3, 76-3).

Sections 7 of the FLSA

To establish a violation of the FLSA for non-payment of overtime hours under 29 U.S.C. § 207, plaintiff must show that: (1) the employees were employed by the defendant; (2) the employees were engaged in commerce or in the production of goods for commerce; (3) the

---

[7] As discussed above, the president and owner of Mercy Services is currently incarcerated and facing charges of Medicaid fraud. As discussed in the motion to compel proceedings, the FBI has searched the Mercy Services premises and seized many of its patient and employee records.

employees worked over forty hours per work week; (4) the employees were not compensated at a rate of 1.5 times their regular rate of pay for each hour worked in excess of forty hours for each work week; and (5) none of the exemptions in 29 U.S.C. § 213 applied to the employees' position. *See* 29 U.S.C. § 207.

Plaintiff's amended complaint establishes the elements of a violation for the non-payment of overtime hours under the FLSA. First, at all relevant times during this action, the individuals listed in Schedule A of the amended complaint were employed by Mercy Services, who is considered an "employer" within the meaning of 29 U.S.C. § 203(d). (Am. Compl. ¶¶ IV-V, Schedule A). Second, Mercy Services had these employees engaged in commerce and had annual gross volume of sales made or business done in an amount not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(1)(A). (Am. Compl. ¶¶ IV-V). Third, as explained in more detail below, Mercy Services employees worked over forty hours per work week and were not compensated at a rate of 1.5 times their regular rate of pay for each hour worked in excess of forty hours for each work week. (Am. Compl. ¶ V). Fourth, no evidence has been produced to show that any of the exceptions listed in 29 U.S.C. § 213 apply to these employees, and they appear to be covered employees entitled to the protections of the FLSA. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) ("An employer bears the burden of proving that a particular employee's job falls within such an exception."). Accordingly, plaintiff has established violations of the FLSA for non-payment of overtime hours.

Section 11(c) of the FLSA

To establish a violation of the FLSA for failure to make, keep, and preserve records under 29 U.S.C. § 211(c), plaintiff must show that: (1) defendant was an "employer" under the FLSA; (2) the employees were employed by defendant; and (3) defendant failed to preserve

13

records of their employees regarding "wages, hours, and other conditions and practices of employment." *See* 29 U.S.C. § 211(c).

Plaintiff's amended complaint establishes the elements of a violation of the record-keeping provision of the FLSA. First, plaintiff's amended complaint establishes that Mercy Services was an employer under Section 3(d) of the FLSA. (Am. Compl. ¶¶ IV-V); *see* 29 U.S.C. 203(d). Second, the individuals listed in Schedule A of the complaint were employed by Mercy Services. (Am. Compl. ¶¶ IV-V, Schedule A). Third, the amended complaint establishes that Mercy Services failed to make, keep, and preserve adequate and accurate records of many of its employees' wages, hours, and other conditions of their employment. (Am. Compl. ¶ VII). Mercy Services misclassified employees as independent contractors and did not keep a record of all hours that its employees worked. (Am. Compl. ¶ VII). Accordingly, plaintiff has established a violation of the FLSA for failure to make, keep, and preserve records.[8]

**Back Wages**

Plaintiff's back wage claim has been a moving target. The complaint and amended complaint do not request a specific amount for back wages and liquated damages. (Docket nos. 1, 2). In the first motion for default judgment and memorandum in support plaintiff states the amount of back wages in $623,048.48, but there was no information provided as to how that amount was calculated. (Docket nos. 16, 17). While plaintiff did file a proposed order that states Schedule A was attached showing the amount due each employee, Schedule A was not attached to the order. (Docket no. 19). After being alerted by the Clerk that an incomplete document had been filed, plaintiff again filed the same proposed order without Schedule A. (Docket no. 20). As discussed above, this motion for default judgment was denied.

---

[8] The most recent declaration from WHI Canadine also states that the time records obtained during the investigation were incomplete and unreliable. (Docket no. 76-3 ¶¶ 12-15).

14

Plaintiff's second motion for default judgment filed on March 29, 2019 also sought back wages in the amount of $623,048.48. (Docket no. 62). Prior to the hearing on this second motion for default judgment, plaintiff's counsel filed a notice cancelling the hearing and indicated that plaintiff would be filing a revised pleading to correct errors in the back wage spreadsheet. (Docket no. 64).

Plaintiff's third motion for default judgment filed on April 12, 2019 indicated that the amount of back wages being sought was $638,197.52 based on defendant's failure to pay the premium overtime rate of 1.5 times their employees' regular rate of pay for hours worked over 40 in a work week. (Docket no. 67 at 7). WHI Canadine states that she identified and itemized defendants' violations of FLSA's overtime provisions from January 3, 2016 to January 1, 2018. (Docket nos. 67-1, 67-3). WHI Canadine states that based on her investigation Mercy Services employees "worked between 51 to 60 [hours] per workweek, and on occasion up to 98 hours per workweek." (Docket no. 67-3 ¶ 6(l)). WHI Canadine relied upon witness interviews and payroll summaries to calculate the back wages owed. (*Id.* ¶ 8). To calculate the back wages, she "took the biweekly gross wages for each employee and divided that by $10.00 – their hourly rate of pay. Then I multiplied each employee's regular rate by one-half to determine his/her overtime hours worked to the extent they paid straight time for overtime hours worked. I multiplied the resulting overtime premium rate times the number of hours the employee worked over 80 in a pay period." (*Id.* ¶ 9).

In reviewing the pleadings prior to the hearing on this third motion for default judgment, the court noticed that the hourly rate used in these calculations appeared to be incorrect and that the calculations concerning the number of hours certain employees worked during the biweekly pay period resulted in incredible (and in some instances impossible) numbers and numbers that

were inconsistent with statement by WHI Canadine that based on her investigation employees "worked between 51 to 60 [hours] per workweek, **and on occasion up to 98 hours per workweek.**" There are 336 hours in a two-week period (24x14=336).  For example, the calculations used to compute the back wages included an employee working 354 hours in a two-week period (J. Price) and another (J. Sanga) working consecutive biweekly periods of 330, 328, 335, 304, and 304 hours.  (Docket no. 62-1 at 6, 10).  There are numerous instances of calculations based on employees working more 300 hours in a two-week period and many more calculations based on an employee working more than 200 hours in a two-week period. Assuming the sworn statement of WHI Canadine is correct that **on occasion** employees worked **up to** 98 hours per workweek, no single biweekly period should have exceeded 200 hours (98x2=196).  The court contacted plaintiff's counsel and on May 9, 2019 plaintiff filed a revised declaration from WHI Canadine and an amended exhibit showing the back wage computations. (Docket nos. 71, 72).  These revised pleadings claim that the proper back wage amount is $643,438.23.  (Docket no. 71).

Unfortunately, the revised pleadings filed on May 9, 2019 only addressed the issue involving the hourly wage ($10.50, not $10.00) and did not correct or even discuss the issue concerning the incredible number of hours claimed and the inconsistency with WHI Canadine's declaration concerning the maximum number of hours employees worked during any workweek (*i.e.* 98 hours).  During the hearing on May 10, 2019, the court attempted to get an explanation for how the Secretary of Labor could make a claim for back-wages using numbers as incredible and inconsistent as those in the pleadings filed with the court.  Plaintiff requested, and the court allowed, two weeks for plaintiff to file a supplemental memorandum.  (Docket no. 74).  Plaintiff filed a supplemental memorandum on May 24, 2019 that had to be refiled on May 28, 2019.

(Docket nos. 75, 76). Once again, the court's request that the Secretary of Labor address directly the issues discussed many times with counsel went unanswered.[9] In fact, a review of these supplemental materials raises more questions than it answers.

The supplemental memorandum argues that given the lack of records of daily and weekly hours worked by the employees the plaintiff does not need to prove each hour worked with "unerring accuracy or certainty" but only "as a matter of just and reasonable inference." The court understands and appreciates that is the law. The issue is whether the manner in which the back wages were calculated in this case can be considered "reasonable." While the method used by WHI Canadine may be reasonable in theory (if done correctly), one needs to consider the results of that method and apply some common sense – particularly in light of a sworn statement that employees only occasionally worked "up to 98 hours per workweek." It was the consideration of the results of this method and applying common sense to those results that the court has been looking for in its numerous requests.

The response provided in the supplemental memorandum is at best confusing. In one instance it says plaintiff has "removed pay periods from certain employees' back wage computations when said computations revealed those employees worked beyond a particular threshold of reasonable work hours in a pay period." (Docket no. 76 at 10). Later the response says if the court continues to have concerns with respect to employees whose back wage computations indicate they worked 300 or more hours in a two week pay period they would consider altering those calculations. (*Id.* at 11). However, the declaration filed with the supplemental memorandum claims that the proper amount of back wages is $664,250.81 – an

---

[9] While it has little bearing on the resolution of this matter, the issue with the redactions from the informants' statements was not one dealing with the protection of an informant's identity as argued in the supplemental memorandum but with the inconsistency in redacting hours worked and schedules in some but not other statements. The court fully understands and never questioned the propriety of having information relating to the **identity** of an informant redacted.

amount that is even **higher** than what was claimed earlier.  The back wage spreadsheet attached to this supplemental memorandum as Exhibit A indicates a total amount due of $664,250.81 ($228,426.72+$435,824.09=$664,250.81) and again includes an employee working 345 hours in a two-week period (Docket no. 76-1 at 42), an employee working 369 hours in a two-week period (*Id*. at 54), and employees working consecutive two-week periods of 330, 328, 335, 304, and 304 hours (*Id*. at 41), 369, 304, 228 and 274 hours (*Id*. at 54), 323, 396, 396, 365, 304, 369, 293 hours (*Id*. at 55-56).  Clearly there was no recalculation or manual deletion of an employee working beyond a threshold of reasonable work hours as stated in the memorandum (Docket no. 76 at 10) or declaration from WHI Canadine (Docket no. 76-3 ¶ 23).  Furthermore, the memorandum fails to even mention the sworn statement from WHI Canadine that employees only worked **up to 98 hours** in a week and the impact of that statement on these calculations.

The additional information provided in the supplemental memorandum only adds to the court's concern relating to the accuracy of the calculations submitted by the Secretary of Labor, even for reasonable estimation purposes.  Plaintiff attached to the supplemental memorandum a spreadsheet of employees' names, job titles, and hourly rates of pay and a sample of the payroll records that were provided by Mercy Services during the investigation and used to calculate the back wage claim.  (Docket nos. 76-4, 76-5).  The payroll summary clearly shows the hour wage as being $10.50 and no explanation has been provided as to why an hourly rate of $10.00 was used initially.  A comparison of the information contained in the sample of payroll records also reveals several instances in which the calculations on the back wage computations spreadsheet are inaccurate.  For example, the payroll records show that on 9/22/2017 a check was issued to Andrew Dunston in the amount of $945.00 with the memo being 9/4/2017 to 9/17/2017 (Docket no. 76-5 at 1).  When one goes to the back-wage calculation spreadsheet for Andrew Dunston,

the amount shown as being paid for that period appears to be $1,491. (Docket no. 76-1 at 29). On the other hand, the payroll record for Betty Price shows a payment of $3,271 and the wage calculation sheet shows a payment of only $1,753.50 (Docket nos. 76-5 at 4 and 76-1 at 31).

For the reasons stated above, it is clear to the undersigned that serious issues exist concerning the way the Secretary of Labor has calculated the back-wages due the employees in this case. Given those issues, the question is to what extent the court should disregard statements made by the Secretary of Labor and sworn to by a Wage and Hour Investigator, especially when the defendant has failed to appear and assert any defenses or denials. As uncomfortable as it may be, the undersigned will recommend that a judgment be entered for back-wages in the most recent amount requested by the Secretary of Labor, that is $664,250.81. Obviously, the final decision of whether to accept that figure will be with the District Judge.

**Liquidated Damages**

In FLSA cases, employees are routinely awarded liquidated damages equal to the amount of unpaid wages. *See* 29 U.S.C. § 216(b); *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985). However, an employer can avoid the imposition of liquidated damages upon a showing "that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. 29 U.S.C. § 260. In this case, the employer Mercy Services has failed to retain substitute legal counsel and cannot continue to defend plaintiff's claims regarding violations of the FLSA. Accordingly, an award of liquidated damages equal to the amount of unpaid wages is appropriate.

Plaintiff seeks liquidated damages in an amount equal to the amount of back wages owed to employees, totaling $664,250.81. (Docket no. 76-3 ¶ 24). WHI Canadine identified and

itemized defendant's violations of FLSA's overtime provisions from January 3, 2016 to January 1, 2018, which, as discussed above, total $664,250.81 in back wages.[10]   (Docket no. 76-3). Accordingly, the undersigned recommends an award of liquidated damages in the total amount of $664,250.81, for a total of $1,328,501.62 in back wages and liquidated damages.

**Injunctive Relief**

The Secretary also seeks an injunction permanently enjoining and restraining Mercy Services, as well as its officers, agents, servants, employees, and those persons in active concert or participation with it who receive actual notice of any such judgment, from violating 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), and 215(a)(5).[11]   (Docket no. 67 at 8).   Under the FLSA, the Secretary may obtain an injunction restraining an employer "for cause shown . . . [from] any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter." 29 U.S.C. § 217; *see also Chao v. Va. Dept. of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002).   Moreover, "[w]here the Secretary has established violations of the Act, the district court should ordinarily grant injunctive relief, even if the employer is in present compliance, unless the district court is soundly convinced that there is no reasonable probability of a recurrence of the violations." *Hugler v. Dominion Granite & Marble LLC*, No. 1:17cv229 (JCC/IDD), 2017 WL 2671300, at *2 (E.D. Va. June 21, 2017) (quoting *Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir. 1980)).

---

[10] Given the fact that Mercy Services' president and owner is incarcerated and facing multiple charges of Medicaid fraud, it is unlikely that the actual amount of any monetary judgment in this case will have any practical significance.

[11] In the amended complaint, plaintiff also requests an injunction "restraining Defendants and Defendants' officers, agents, servants, employees, and those persons in active concern or participation with Defendants, from withholding payment of overtime compensation found due to employees and pre-judgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621" if the court does not award liquidated damages.   (Am. Compl. ¶ IX at 6-7).   However, plaintiff does not request this relief in the amended motion for default judgment (Docket no. 67 at 8), and the undersigned recommends an award of liquidated damages. Accordingly, the undersigned does not address that request for relief.

The undersigned has recommended a finding that plaintiff has established that Mercy Services withheld the payment of overtime compensation and failed to make, keep, and preserve records under the FLSA.  Accordingly, the undersigned also recommends an injunction permanently enjoining and restraining Mercy Services, as well as its officers, agents, servants, employees, and those persons in active concert or participation with it who receive actual notice of any such judgment, from violating 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), and 215(a)(5).

## Conclusion

For these reasons, the undersigned recommends that a default judgment be entered in favor of plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor and against defendant Mercy Services of Health, Inc. d/b/a Mercy Services of Health in the total amount of $1,328,501.62, comprising $664,250.81 in back wages and $664,250.81 in liquidated damages.  The undersigned further recommends an injunction permanently enjoining and restraining Mercy Services, as well as its officers, agents, servants, employees, and those persons in active concert or participation with it who receive actual notice of any such judgment, from violating 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), and 215(a)(5).

## Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to defendant Mercy Services of Health, Inc. d/b/a Mercy Services of Health, c/o John Ndunguru, Fairfax County Adult Detention Center, 10520 Judicial Drive, Fairfax, Virginia 22030, and to Mercy Services of Health, Inc. 5520 Cherokee Avenue, Suite 200, Alexandria, Virginia 22312, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives

appellate review of the substance of the proposed findings of fact and recommendations and

waives appellate review of any judgment or decision based on this proposed findings of fact and

recommendations.

      ENTERED this 14th day of June, 2019.

                                     /s/
                            John F. Anderson
                            United States Magistrate Judge
                            John F. Anderson
                            United States Magistrate Judge

Alexandria, Virginia